**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

**BRENDA KAY JOHNSON,**

       **Plaintiff,**

**v.**                                   **Civil Action No.**

**VETTY, INC.,**

                                       **JURY TRIAL DEMANDED**

       **Defendant.**

## COMPLAINT

Brenda Kay Johnson ("Plaintiff" or "Ms. Johnson") by and through her counsel brings the following Complaint against Vetty, Inc. ("Defendant" or "Vetty") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment consumer report wherein Defendant published to Plaintiff's potential employer which falsely portrayed Plaintiff as being convicted of two criminal cases.

## INTRODUCTION

1.      This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.      Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.     Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was convicted of "battery on person" and a "hit and run resulting in property damage." Defendant's reporting is grossly inaccurate and untrue.

4.     Plaintiff has never been charged with or convicted of battery or a hit and run.

5.     Plaintiff's prospective employer ordered an employment purposed consumer report about Plaintiff from Defendant. Plaintiff's prospective employer denied Plaintiff's job application after receiving a consumer report for employment purposes from Defendant, which included the inaccurate criminal convictions, which do not belong to Plaintiff.

6.     Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available underlying public court records from Kern County, California regarding the criminal convictions prior to publishing Plaintiff's report to her prospective employer.

7.     Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that the criminal records belong to a different consumer who is wholly distinguishable from Plaintiff by their middle name, date of birth, Social Security number, and even resides in a different part of the country from Plaintiff.

8.     Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9.     Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10.     Defendant's inaccurate report cost Plaintiff a good paying job and job security.

11.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual injuries resulting in damages including, without limitation, loss of employment

opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time trying to correct her consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; physical injury and sickness including loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12.     As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA; for failing to conduct a reasonable reinvestigation to determine whether the information Plaintiff disputed – **the criminal records that do not belong to her** – was inaccurate and delete the disputed information from the subject employment report, in violation of the FCRA, 15 U.S.C. § 1681i; and for failing to notify the consumer of the fact that public record information was being reported by it, together with the name and address of the person to whom such information was being reported, in violation of the FCRA, 15 U.S.C. § 1681k.

## PARTIES

13.     Brenda Kay Johnson ("Plaintiff" or "Ms. Johnson") is a natural person residing in Gloucester, Virginia, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14.     Defendant Vetty, Inc. ("Defendant" or "Vetty") is a foreign corporation doing business throughout the United States, including the Commonwealth of Virginia and in this District, and has a principal place of business located at 222 Broadway, New York, New York 10038. Defendant Vetty can be served at their registered agent c/o Incorporating Services, LTD located at 3500 South Depont Highway, Dover, Delaware 19901.

15.     Among other things, Defendant sells consumer reports for employment purposes, which are also called background checks, to employers and/or staffing agencies for

their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

16.     Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17.     This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and Division.

## STATUTORY BACKGROUND

19.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.   15 U.S.C. § 1681.

21.     Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22.     Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment purposed consumer reports like the one Defendant prepared about the Plaintiff and sold to her employer.

24.     The FCRA provides a number of protections for job applicants who are the subject of consumer reports for purposes of securing employment, housing, and other purposes.

25.     In the parlance of the FCRA, background checks are "consumer reports," and providers of such consumer reports, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

26.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28.     Under 15 U.S.C. § 1681k, consumer reporting agencies are required to "notify the consumer of the fact that public record information is being reported by the consumer

reporting agency, together with the name and address of the person to whom such information is being reported."

29.     Defendant disregarded its duties under the FCRA with respect to Plaintiff's consumer report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

30.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the employment purposed consumer report industry.

31.     As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

32.     The background check services industry takes in revenues in excess of three billion dollars, annually.[2]

33.     Employment purposed consumer reports are generally created by running automated searches through giant databases of aggregated data, including data that contains criminal public records. The reports are created and disseminated with little-to-no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal consumer reports.

34.     Consumer reporting companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The

---

[1]     CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").
[2] IBISWorld, Inc., *Consumer report Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

35.     Upon information and belief, both the California and Virginia court websites feature prominent disclaimers about the accuracy of the information and admonish users to obtain certified records directly from the courts.

36.     Given that Defendant is in the business of selling consumer reports, Defendant should be well aware of the disclaimers, the requirements of the FCRA, and the attendant harm to consumers for reporting inaccurate or outdated information.

37.     Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

38.     Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

39.     Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

40.     Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting criminal convictions that belong to an unrelated consumer who has a different middle name, date of birth, and Social Security number, and resides in a different part of the country than Plaintiff.

41.     As a provider of consumer reports, and an accredited member of the Professional Background Screening Association ("PBSA"), Defendant is well-aware of the FCRA's strict requirements concerning employment-purposed consumer reports.

42.     PBSA provides its members with compliance information and training and hosts a conference at least once a year where presenters discuss up-to-date compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for a Job with Bon Secours Mary Immaculate Hospital

43.     In the beginning of August 2023, Plaintiff applied for full-time employment as a Housekeeper at Bon Secours Mary Immaculate Hospital ("Mary Immaculate"), located in Newport News, Virginia through the staffing agency, "HHS."

44.     Upon applying to Mary Immaculate through HHS, Plaintiff successfully completed an interview.

45.     Shortly after successfully completing the interview, HHS extended a job offer to Plaintiff for the position to which she applied. The job offer was conditioned upon Plaintiff passing an employment purposed consumer report ("employment report") and drug test.

46.     On or about August 16, 2023, Plaintiff visited Mary Immaculate and passed her drug test. She also completed an authorization consenting to a consumer report and was informed by HHS that it would get back to her within two weeks for onboarding.

### Defendant Published an Inaccurate Consumer Report to HHS

47.     HHS contracted with Defendant to provide employment purposed consumer reports, including criminal records searches, on its prospective employees.

48.     On or about August 16, 2023, HHS ordered a consumer report with criminal records search about the Plaintiff from Defendant.

49.     On or about August 21, 2023, in accordance with its standard procedures, Defendant completed its employment purposed consumer report about Plaintiff, which it  sold to HHS.

50. Within that consumer report, Defendant published outrageous inaccurate information about Plaintiff.

51. Specifically, Defendant's consumer report about Plaintiff included two grossly inaccurate and stigmatizing criminal convictions (Case Nos. BF184987A and BM956358A) from Kern County, California ("Criminal Records at Issue"), which appeared in the consumer report as follows:

**Case 1**

Case Number: BF184987A

First Name: BRENDA

Last Name: JOHNSON

DOB █████████

County: KERN

State: CA

**Charge: BATTERY ON PERSON**

Disposition: NOLO CONTENDERE / PROBATION - 1yrs, JAIL/PRISON 16 DAYS, TOTAL CREDIT 0016 TIME SERVED 8 DAYS GOOD BEHAVR 8 DAYS,

Disposition Date: 10-07-2021

Charge Type Classification: M

Charge Date: 04-09-2021

Statute: 243(A)

…

**Case 2**

Case Number: BM956358A

First Name: BRENDA

Last Name: JOHNSON

DOB █████████

County: Kern

State: CA

**Charge: HIT AND RUN RESULTING IN PROPERTY DAMAGE**

Disposition: NOLO CONTENDERE / PROBATION - 1 yrs, JAIL/PRISON 12 DAYS, TOTAL CREDIT 0012 TIME SERVED 6 DAYS GOOD BEHAVR 6

52.     The criminal convictions reported by Defendant about Plaintiff to HHS ***do not*** belong to Plaintiff.

53.     Plaintiff has never been charged with or convicted of battery or a hit and run in her life.

54.     Additionally, Plaintiff does not live in California, nor has she ever visited California.

55.     A cursory review of the widely available underlying public court records confirms that the records belong to an unrelated female, Brenda Johnson a/k/a "Naomi Sister S Name Johnson" and "Brenda Balinton" ("Convicted Johnson").

56.     Had Defendant actually consulted or obtained the widely available underlying public court records, as instructed to do so by California's Judicial Branch, regarding the two convictions, it would have seen obvious discrepancies between Convicted Johnson and Plaintiff. https://www.kern.courts.ca.gov/online-services/case-information-search (last visited October 11, 2023).

57.     The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Johnson include the following:

    (a)     Plaintiff's legal name is "Brenda Kay Johnson," and the criminal records belong to a "Brenda Johnson," (no middle name and who also utilizes the aliases "Naomi Sister S Name Johnson" and "Brenda Balinton") which is both clearly indicated in the widely available public records from Kern County, California;

    (b)     Plaintiff's date of birth, which was provided to Defendant prior to publishing the subject employment report, is different than that of Convicted Johnson;

(c)      Plaintiff has never resided in California, yet the underlying public court records regarding the two criminal convictions indicate that Convicted Johnson resided in California at the time she committed the offenses; and,

(d)      Plaintiff's Social Security number, which was provided to Defendant, is contained on the face of the subject employment report and is entirely different than that of Convicted Johnson.

58.     The sole reason the inaccurate criminal records were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

59.     Defendant failed to use strict procedures to ensure its report about Plaintiff contained information that was complete and up to date.

60.     Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal convictions belong to an unrelated individual with a different middle name than Plaintiff, a different date of birth, a different Social Security Number, and who resides in a different part of the country than Plaintiff.

61.     In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

62.     Further, Plaintiff was not informed by Defendant that it had provided the public record information likely to have an adverse impact on employment to Plaintiff's prospective employer at the time the information was provided.

63.     Accordingly, Plaintiff was not afforded an opportunity to dispute and correct the inaccurate report *before* Plaintiff's employer made an adverse decision to terminate Plaintiff's employment.

64.     The FCRA has an employment-specific provision designed to address the very kind of harm that the Plaintiff suffered as a result of Defendant's conduct when public records are likely to have an adverse affect on employment, which is to either provide an immediate notice to the applicant at the time it published public records to the user of the report or it must maintain strict procedures to ensure the public record information is complete and up to date.

65.     Defendant violated 15 U.S.C. § 1681k(a) because it failed to comply with either subsection § 1681k(a)(1) by failing to notify Plaintiff that it had provided adverse public record information to Plaintiff's employer at the time it provided the public record information to Plaintiff's employer; or subsection § 1681k(a)(2) by failing to maintain strict procedures to ensure the adverse public record information it reported about Plaintiff was complete and up to date.

**HHS Denies Plaintiff's Job Application**

66.     In or around late-August/early September 2023, more than two weeks passed, and the Plaintiff was supposed to have heard from HHS for onboarding, but she had not yet heard back. Since Plaintiff hadn't heard back from HHS, Plaintiff called HHS.

67.     During Plaintiff's call with HHS, the HHS representative informed Plaintiff that HHS could not hire Plaintiff because she had not passed the background check.

68.     Plaintiff was not informed by Defendant that it had provided the criminal public record information likely to have an adverse impact on employment and was not allowed an opportunity to dispute and correct the inaccurate information before HHS made an adverse decision not to offer her employment.

69. Thereafter, Plaintiff made numerous calls to HHS and Defendant in an attempt to secure a copy of her background report.

70. Defendant falsely informed Plaintiff that it was not able to provide her with anything, and that she would need to contact HHS.

71. On or about September 18, 2023, Plaintiff finally received a pre-adverse action letter from HHS stating that HHS was unable to offer Plaintiff employment as a direct result of the inaccurate information reported by Defendant.

72. On or about September 18, 2023, Plaintiff also obtained a copy of the consumer report and was shocked and humiliated upon reviewing and realizing that the serious criminal convictions of a complete stranger, namely Convicted Johnson, were published in the consumer report about Plaintiff that Defendant sold to HHS.

73. Plaintiff contacted HHS and informed it that she has never lived in California, that she is not Convicted Johnson, and explained that the serious criminal convictions of Convicted Johnson do not belong to her.

74. Plaintiff was very panicked, confused, and concerned about the impact of Convicted Johnson's serious criminal convictions reported on the subject employment report – specifically, the impact of the same on her future. Plaintiff also began to fear that her identity may have been stolen.

75. Specifically, Defendant matched Plaintiff and Convicted Johnson and published the criminal records of Convicted Johnson onto the employment report about Plaintiff and sold that report to Plaintiff's prospective employer. Exculpatory public record information was widely available to Defendants prior to publishing Plaintiff's employment report to HHS, but Defendant failed to perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant's Employment Report**

76.     On or about September 18, 2023, desperate to secure employment with Mary Immaculate and riddled with worry over the far-reaching impacts of being confused with a convicted criminal, Plaintiff disputed the inaccurate information with Defendant. Plaintiff disputed via telephone with Defendant.

77.     Plaintiff identified herself and provided information to Defendant to support her dispute.

78.     Plaintiff specifically disputed the criminal records of Convicted Johnson.

79.     Plaintiff specifically stated that the criminal records of Convicted Johnson do not belong to Plaintiff.

80.     Plaintiff specifically asked Defendant to investigate and delete Convicted Johnson's criminal records from any employment report about Plaintiff.

**Defendant Failed to Conduct a Reasonable Reinvestigation and Correct the Employment Report**

81.     Upon information and belief, on or about September 18, 2023, during Plaintiff's phone call dispute with Defendant, Defendant refused to reinvestigate Plaintiff's dispute of the Criminal Records at Issue.

82.     Defendant failed to issue a corrected employment report to HHS.

83.     Despite Plaintiff's dispute, Defendant failed to conduct a reasonable reinvestigation of Plaintiff's September 2023 dispute and failed to delete the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

84.     Because Defendant failed to issue a corrected employment purposed consumer report, HHS did not reinstate its job offer to Plaintiff.

85.     But for Defendant's inaccurate employment purposed consumer report, Plaintiff's job offer would have proceeded to a hiring action, and Plaintiff would have been

spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Defendant's erroneous reporting.

86.     Defendant's false report cost Plaintiff a promising, well-paying job with Mary Immaculate.

87.     The position with Mary Immaculate was full-time (with a guarantee of a minimum of forty hours per week), and Plaintiff was set to earn $15.00 per hour with a competitive benefits package. Plaintiff was also excited to work at Mary Immaculate because she was qualified to successfully perform the work and had held similar positions for many years.

88.     Due to Defendant's unreasonable procedures and shoddy, if any, dispute reinvestigation, and despite Plaintiff's continued efforts to seek employment, Plaintiff was unemployed for approximately two weeks, before she found another job.

89.     Nevertheless, Plaintiff's current job has several drawbacks compared with the position with the Mary Immaculate position, such as lower pay (it pays only $13.50/hour), she is not guaranteed 40 hours of work a week and is often sent home early, the position does not provide any benefits, and it is a further drive for Plaintiff.

90.     The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

91.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of injuries resulting in actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time trying to correct her consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her

reputation; physical injuries and sickness such as loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

92.     Plaintiff has also been unable to afford to move out of her sister's home because she has been making significantly less than she would have been at Mary Immaculate. Additionally, Plaintiff has fallen behind on her bills, including her auto loan payment. Consequently, Plaintiff's (and her co-signor's) credit scores have decreased.

93.     Defendant is on direct notice from the originating courts that they disclaim accuracy of the information unless the records are obtained from the original courts. Defendants ignored this direct admonition, instead choosing the cheapest way to assemble data in a shoddy fashion in order to maximize money for itself in reckless disregard of the rights of the consumers.

94.     Defendant is an accredited member of PBSA, thus it supposedly knows that it must follow the FCRA as established in Virginia and the Fourth Circuit to follow reasonable procedures to ensure that the reports it publishes about consumers are maximally accurate; to maintain strict procedures to ensure that criminal public records are complete and up-to-date, or provide the consumer with notice at the time it supplies a user with a consumer report containing criminal public records likely to have an adverse effect on employment; to promptly disclose to the consumer all information in her file upon request; and to conduct a reasonable investigation of her dispute. Defendant failed to comply with each and every one of these important provisions of the FCRA designed to protect consumers from reckless disregard of their rights.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

95.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

96.     Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

97.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

98.     At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

99.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

100.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time trying to correct her consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

101.    Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

102. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
### 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation

103. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

104. The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

105. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

106. On at least one occasion during 2023, Plaintiff disputed the inaccurate information with Defendant and requested that Defendant correct and/or delete the inaccurate information in the employment report that is patently inaccurate, misleading, and highly damaging to her, namely, stating that she has been convicted of two serious crimes.

107. In response to Plaintiff's dispute, Defendant failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the employment report and refused to correct the employment report at issue.

108. Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to

delete the disputed inaccurate information from the subject employment report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a public source it has reason to know is unreliable.

109. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time trying to correct her consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

110. Defendant willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

111. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT III
### 15 U.S.C. § 1681k(a)(1)
### Failure to Provide "At the time" Notice

112. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

113. The FCRA imposes specific requirements on consumer reporting agencies, like Defendant, that sell and distribute a consumer report for employment purposes that include public records.

114. Specifically, 15 U.S.C. § 1681k(a) requires that a consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

115. Upon information and belief, Defendant violated 15 U.S.C. § 1681k(a) because it failed to notify Plaintiff of the adverse public records information it had provided to HHS at the time it provided her consumer report to HHS, and it failed to maintain **strict** procedures to ensure the adverse information it reported about Plaintiff was complete and up to date.

116. Defendant's consumer report about Plaintiff was furnished for an employment purpose and contained one or more public records of the type that may adversely affect an employer's hiring decision.

117. Plaintiff did not learn of the adverse information in Defendant's consumer report until HHS informed her of the adverse action.

118. Plaintiff did not even know that Defendant had provided a consumer report for employment purposes (which included adverse public records information) to HHS until after HHS had decided to rescind the job offer previously extended to Plaintiff.

119. Defendant failed to comply with the rigors of 15 U.S.C. § 1681k(a)(2) and therefore must necessarily rely upon its compliance with § 1681k(a)(1).

120. Upon information and belief, Defendant did not send to Plaintiff the requisite notice pursuant to 15 U.S.C. § 1681k(a)(1).

121. Upon information and belief, Defendant did not itself or by its own court researchers or vendors attempt to verify the completeness or current status of the public records pursuant to 15 U.S.C. § 1681k(a)(2), within thirty days before it furnishes and resells these records in one of its reports.

122. Defendant violated 15 U.S.C. § 1681k(a)(1) by failing to provide the required FCRA notices to Plaintiff.

123. As a result of Defendant's violations of the FCRA, Plaintiff has suffered injuries resulting in a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time trying to correct her consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; physical injuries and sickness resulting from loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

124. Defendant willfully violated 15 U.S.C. § 1681k(a)(1) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

125. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT IV**
**15 U.S.C. 1681g(a)**
**Failure to clearly and accurately disclose the contents of the Plaintiff's file upon request**

126.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

127.     The FCRA required Defendant to clearly and accurately disclose all information it had about Plaintiff to her upon request.  Instead of providing such information to her, Defendant refused to provide the information to which she was entitled and instead pointed their finger at the employer, HHS.

128.     Defendant had an independent and non-delegable duty to provide the Plaintiff with a copy of her disclosure upon request, and thus refusal to do so violated 15 U.S.C. 1681g(a).

129.     Without knowing what information was in her report and the source of the information, the Plaintiff was left without the ability to dispute the information, go to the sources of the information, or otherwise take action to correct the inaccuracies.

130.     Defendant knew or should have known that it was obliged to provide Plaintiff a copy of her disclosure upon request, especially since it is such a basic requirement of the FCRA that any accredited member of the PBSA would know.

131.     As a result of Defendant's willful and reckless conduct, Plaintiff was left without timely information she needed to correct the inaccuracies and potentially save her job.

132.     As a result of the informational injuries, Plaintiff lost time and labor chasing down her the consumer information Defendant sold to HHS about her; she suffered injuries resulting in a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time trying to correct her consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her

reputation; physical injuries and sickness resulting from loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

133.     Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.     Determining that Defendant negligently and/or willfully violated the FCRA;

ii.     Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.     Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.     Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 12th day of October 2023.

**BRENDA KAY JOHNSON**

*/s/ Susan M. Rotkis*
Susan M. Rotkis, VSB 40693
**CONSUMER ATTORNEYS**
2290 East Speedway Boulevard
Tucson, AZ 85719
T: 602-807-1504
E: srotkis@consumerattorneys.com

*Attorneys for Plaintiff*